UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

AMERICAN COASTAL INSURANCE
COMPANY, FEDNAT INSURANCE
COMPANY and DENISE TALT, a
Florida corporation, as subrogee of
Eagle Ridge Condominium Association,
Inc.,

    Plaintiffs,

v.                                          Case No.: 2:19-cv-180-FtM-38MRM

ELECTROLUX HOME PRODUCTS,
INC.,

    Defendant.
_____/

## **OPINION AND ORDER**[1]

Before the Court is Defendant Electrolux Home Products, Inc.'s Motion to Dismiss the Second Amended Complaint (Doc. 49) and Plaintiffs FedNat Insurance Company and American Coastal Insurance Company's Responses in Opposition (Doc. 53; Doc. 51). For the following reasons, the Motion is granted with leave to amend.

## **BACKGROUND**

This is a products liability case stemming from a fire allegedly caused by Electrolux's electric ranges. The Court recounts the factual background as pled in Plaintiff's Second Amended Complaint, which it must take as true to decide whether the

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

Second Amended Complaint states a plausible claim. See *Chandler v. Sec'y Fla. Dep't of Transp.*, 695 F.3d 1194, 1198-99 (11th Cir. 2012). Talt purchased an electric range manufactured by Electrolux in early 2013. (Doc. 48 at 4). Over three years later, while it was on self-cleaning mode, the range caught fire in Talt's apartment in the Eagle Ridge Condominiums. (Doc. 48 at 4). The fire spread to a surrounding unit owned by the Leutz family and areas owned by the Eagle Ridge Condominium Association. (Doc. 48 at 4).

Eagle Ridge's insurer, American Coastal Insurance Company (ACIC), paid Eagle Ridge $49,533.33 for repairs. (Doc. 48 at 6). Talt's insurer, FedNat, paid Talt $60,088.34 for repairs. (Doc. 48 at 6). And the Leutz family's insurer, also FedNat, paid the Leutzes $27,344.15 for repairs. (Doc. 48 at 7). Both insurance companies sue Electrolux to recover the amount they paid to the insured parties, claiming that they are subrogated to the rights of their insureds. (Doc. 48 at 5-7). Talt sues on her own behalf for $85,301.37 in unspecified "additional losses." (Doc. 48 at 7). Electrolux moves to dismiss FedNat from this case for lack of standing and to dismiss Count III brought by ACIC under Fed. R. Civ. P. 12(b)(6).

**STANDARD OF REVIEW**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations as true and view them in a light most favorable to the plaintiff. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This consideration is limited "to the pleadings and exhibits attached thereto[.]" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quotations omitted). However, a complaint listing mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555

(2008). Likewise, "[f]actual allegations that are merely consistent with a defendant's liability" are insufficient. *Chaparro v. Carnival Corp*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotations and citations omitted). And the allegations must not force the court to speculate or operate on mere suspicion. *Twombly*, 550 U.S. at 555. In contrast, the Court will not dismiss a complaint where the Plaintiff pleads facts that make the claim facially plausible. *See Twombly*, 550 U.S. at 570. A claim is facially plausible when the court can draw a reasonable inference, based on the facts pleaded, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 557). Thus, when the complaint contains "well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## DISCUSSION

Count I, strict products liability, is brought on behalf of all Plaintiffs. Count II, breach of implied warranty of merchantability, is brought on behalf of FedNat and Talt only. Count III, failure to warn, is brought on behalf of all Plaintiffs.

1. **FedNat's Standing (all counts)**

In the First Amended Complaint, FedNat alleged that it had standing to sue as subrogee of Talt and the Leutzes "by virtue of" making contractual insurance payments. (Doc. 40 at 6). In response to Electrolux's previous motion to dismiss, the Court examined the law of contractual and equitable subrogation, explaining that FedNat could not be subrogated to Talt or the Leutzes solely by making these payments. (Doc. 47 at 4-6).

Rather, if FedNat was alleging contractual subrogation, it must allege that there was a subrogation agreement between itself and its insureds. (Doc. 47 at 4).

However, the Second Amended Complaint perpetuates the same problems. The subrogation paragraphs of the Second Amended Complaint read almost identically to the first, adding only two sentences. *Compare* Doc. 40 at ¶¶ 33, 35 *with* Doc. 48 at ¶¶ 33, 35. After claiming, again, that FedNat is subrogated to Talt and the Leutzes "by virtue of" their payments, the Second Amended Complaint adds: "[a] true and correct copy of the Talt Subrogation Assignment is attached hereto as Exhibit E" and "the Leutz Subrogation Assignment is attached hereto as Exhibit F." (Doc. 48 at 6, 7; Doc. 48-5 (Talt subrogation agreement); Doc. 48-6 (Leutz subrogation agreement)). But the Talt and Leutz subrogation agreements are dated and signed August 2, 2019 and July 30, 2019, respectively – several months after the first complaint was filed in this case. (Doc. 48-5; Doc. 48-6; *see* Doc. 1). Electrolux argues that the recency of the subrogation agreements is fatal to FedNat's claims of standing. (Doc. 49 at 4-5). The Court agrees.

Standing is assessed at the time a suit is originally filed. *Davis v. FEC*, 554 U.S. 724, 734 (2008). A subrogee acquires standing to sue through subrogation. *See Dixie Nat'l Bank v. Emp'rs Commercial Union Ins. Co.,* 463 So. 2d 1147, 1151 (Fla. 1985). There are there are two forms of subrogation – contractual and equitable. *Dade Cty. Sch. Bd. v. Radio Station Wqba*, 731 So. 2d 638, 646 (Fla. 1999). Thus, to show standing, FedNat must allege it was contractually or equitably subrogated to Talt and the Leutzes' debts when suit was originally filed. *See id.*; *Davis*, 554 U.S. at 734. And FedNat does not make this showing.

4

The attached subrogation agreements are dated several months after suit was filed. Standing alone, the agreements do not reasonably imply that a subrogation agreement existed four months before they were executed. Quite the opposite, the present tense language of the agreements strongly implies that Talt and the Leutzes subrogated to FedNat at the time the agreements were executed, not before. (*See* Doc. 48-5; Doc. 48-6 ("The Undersigneds *hereby* . . . *subrogates* to the said Insurer all rights . . . and *do / does* empower the said Insurer to sue . . . and the said Insurer *is hereby* fully substituted in the place of the undersigned and subrogated[.]")) (emphasis added). Because the remaining subrogation allegations in the Second Amended Complaint are identical to those the Court found insufficient to establish contractual or equitable subrogation in its July 26, 2019 Opinion and Order (Doc. 47), the Court cannot reasonably infer standing from the remaining allegations or attachments to the Second Amended Complaint.

Finally, FedNat asks the Court to consider a Litigation and Joint Prosecution between FedNat, ACIC, and Denise Talt. (Doc. 53 at 5-6; Doc. 53-1). The Joint Prosecution Agreement is not part of the pleadings; it is presented for the first time as an attachment to FedNat's Response. (Doc. 53-1). Although the Court may consider extrinsic documents at the 12(b)(6) stage in some cases, *see Page v. Postmaster Gen. & Chief Exec. Officer of the United States Postal Serv.*, 493 F. App'x 994, 995 (11th Cir. 2012), the Joint Prosecution Agreement does not confer standing. FedNat argues that the agreement "set[ting] forth the parties' duties and obligations in jointly pursuing the causes of action" and "the fact that the subject Complaint was filed jointly" by Talt and FedNat is "conclusive[] evidence[]" of subrogation. (Doc. 53 at 5-6). Although these

5

practices might be common in cases where an insurer is validly subrogated, assuming subrogation from these circumstantial facts, especially when considering FedNat's actual allegations, simply begs the question. *See Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 976 (11th Cir. 2005) ("It is not enough that 'the [plaintiff]'s complaint sets forth facts from which we could imagine an injury sufficient to satisfy Article III's standing requirements,' since 'we should not speculate concerning the existence of standing[.]'") (quotations omitted). Even under the most favorable reading of the Second Amended Complaint's allegations, it appears FedNat jumped the gun and filed suit before Talt and the Leutzes legally subrogated their rights. Therefore, FedNat does not have standing to sue in this matter and will be dismissed without prejudice.

To fix this jurisdictional problem, FedNat requests permission to amend and substitute Talt and the Leutzes in its place. The Court will allow substitution, because substituting Talt and the Leutzes for FedNat works no prejudice to Electrolux and maintains the original suit and cause of action. *See* Fed. R. Civ. P. 17; *Delta Coal Program v. Libman*, 743 F.2d 852, 856 n.6 (11th Cir. 1984).

### 2. Failure to Warn (Count III)

In Count III, ACIC and Talt individually bring a cause of action against Electrolux for failure to warn. (Doc. 48 at 11). Electrolux moves to dismiss ACIC, arguing that ACIC cannot bring such a claim because neither ACIC nor Eagle Ridge were consumers or users within the meaning of failure to warn. (Doc. 49 at 6). In response, ACIC argues that Electrolux has waived its chance to object because it did not raise this argument against ACIC in previous motions to dismiss, and consumer or user status is not an essential part of failure to warn. (Doc. 51 at 4-6).

At the outset, the Court notes that Electrolux has not waived its right to bring this 12(b)(6) motion. Although Rule 12 requires certain issues to be raised in the first motion, failure to state a claim is not one of them. *See* Fed. R. Civ. P 12(h)(1) (identifying only subsections (b)(2)-(5) as waivable). Much the opposite, failure to state a claim is a fundamental defense that can be raised even in the middle of trial. *See* Fed. R. Civ. P. 12(h)(1)(2)(C); *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 686 (5th Cir. 2017) (holding that 12(b)(6) motions can be raised successively); *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012) (same). Consequently, Electrolux is entitled to bring this Motion to Dismiss even though it could have done so earlier.

Unfortunately, the Court cannot delve too deeply into the merits of the Motion to Dismiss Count III because the count is too vague to state a clear cause of action. Florida tort law includes *both* a strict liability and a negligence version of failure to warn. *See Ferayorni v. Hyundai Motor Co.*, 711 So. 2d 1167, 1172 (Fla. Dist. Ct. App. 1998). These are separate causes of action which have their own elements. *See* Fla. Standard Jury Instructions in Civil Cases 403.8, 403.10. But Count III of the Second Amended Complaint does not clearly allege either strict liability or negligent failure to warn: Count III is generically labeled "failure to warn." (Doc. 48 at 11). And, rather than providing allegations which clearly correspond to the elements of one of the two options, Count III is rife with conclusory statements not clearly linked to the elements of either tort. (Doc. 48 at 11-12).

Since the Court cannot tell whether Count III is meant to be a claim in negligence, strict liability, or both, the Court cannot determine whether Count III is just poorly drafted or an impermissible shotgun pleading. *See Weiland v. Palm Beach Cty. Sheriff's Office,*

7

792 F.3d 1313, 1322-23 (11th Cir. 2015) (holding that counts containing multiple causes of action are shotgun pleadings). And ACIC's interchangeable use of the two theories in its Response to the Motion to Dismiss does not instill confidence that only one cause of action is alleged in Count III. (Doc. 51 at 5). Moreover, the legal standard for nonusers depends on the type of claim, so the Court needs to know what ACIC intends to assert. *See, e.g., West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 89 (Fla. 1976) (adopting the Second Restatement's formulation of strict liability and extending it to foreseeable bystanders). Therefore, the Court grants Electrolux's Motion to Dismiss Count III as to ACIC with leave to amend to address these deficiencies.

Accordingly, it is now

**ORDERED:**

1) Defendant Electrolux Home Products Inc.'s Motion to Dismiss Second Amended Complaint (Doc. 49) is **GRANTED**.

2) Counts I-III of the Second Amended Complaint (Doc. 48) as to FedNat Insurance Company are **DISMISSED without prejudice** to filing a Third Amended Complaint substituting Denise Talt, Todd Leutz, and Cathleen Leutz for FedNat Insurance Company. The Clerk is directed to terminate FedNat Insurance Company as a Defendant.

3) Count III as to American Coastal Insurance Company, as subrogee of Eagle Ridge Condominium Association, Inc., is **DISMISSED without prejudice** to filing a Third Amended Complaint consistent with this Opinion and Order by **October 23, 2019**.

**DONE** and **ORDERED** in Fort Myers, Florida this 9th day of October, 2019.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record